UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TOBIE GILLESPIE | * | CIVIL ACTION |
| VERSUS | * | NO. 08-1675 |
| TIM WILKINSON, WARDEN | * | SECTION "A"(6) |

## **REPORT AND RECOMMENDATION**

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]  Therefore, for the following reasons, IT IS RECOMMENDED that petitioner's federal habeas application be DENIED WITH PREJUDICE.

---

[1]Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Procedural Background

Petitioner, Tobie Gillespie, is a state prisoner currently incarcerated at the J. Levy Dabadie Correctional Center, in Pineville, Louisiana. The record reflects that on April 29, 2004, Gillespie was convicted by a jury of one count of illegally carrying a weapon while in possession of a controlled dangerous substance or while committing an act of violence, a violation of La. R.S. 14:95E and one count of attempted manslaughter, a violation of La. R.S.14:27 and 14:31.[2] Petitioner was sentenced to a term of 7 ½ years for the illegal carrying of a weapon charge, without benefit of parole, probation or suspension of sentence; and, to a term of 20 years, without benefit of parole, probation or suspension of sentence, on the charge of attempted manslaughter.  Each sentence is to be served consecutive to the other.[3] Petitioner filed a timely direct appeal of his convictions and sentences on July 18, 2005.[4] Two motions to supplement the record were also filed.[5] The Louisiana Court of Appeal, First Circuit, denied the motions to supplement on November 4, 2005, and affirmed petitioner's

-------

[2]See State vol. 1, Minute Entry of Jury Verdict dated April 29, 2004, p. 47.  Gillespie was originally charged with two counts of attempted first degree murder and one count of illegally carrying a weapon while in possession of a controlled dangerous substance or while committing an act of violence. See State Rec. vol. 1 at p. 59, Felony Bill of Information. The jury found him guilty of the responsive verdict of one count of attempted manslaughter, acquitted him of one count of attempted first degree murder and found him guilty of the count of illegal carrying of a weapon.

[3]See State Rec. vol. 1, Minute Entry of Sentencing dated December 21, 2004 and State Rec. Vol. 4, Transcript of Sentencing dated December 21, 2004.

[4]See State Rec. vol. 6 for a copy of petitioner's direct appeal in Writ No. 2005-KA-1337.

[5]See State Rec. vol. 6 for a copy of these motions.

convictions and sentences on May 5, 2006. A subsequent request for rehearing was also denied on June 30, 2006.[6] Petitioner, with counsel, then filed a request for a writ of certiorari with the Louisiana Supreme Court on July 31, 2006[7] and that court denied writs on March 30, 2007.[8]   On June 21, 2007, petitioner filed a "Writ of Habeas Corpus on Newly Discovered Evidence" with the trial court which was summarily denied on June 22, 2007.

---

[6]*State v. Gillespie*, 930 So.2d 1241 (La. App. 1 Cir., May 05, 2006)(Table NO. 2005-KA-1337; See Order denying rehearing in State Rec. vol. 6.

[7]See Fed. Rec. Doc. 1-2 for a copy of this writ application. The issues raised before the Louisiana Supreme Court encompassed those issues raised in the initial appeal as well as those which the defense unsuccessfully attempted to supplement to the appeal.  These issues are as follows: 1) It was error for the trial judge to introduce the PowerPoint presentation on behalf of the prosecutor and to misrepresent the presentation to defense counsel and prospective jurors during voir dire.  The judge's actions and that of his staff who viewed and critiqued the presentation for the prosecutor violated the spirit of the Code of Judicial Conduct, gave the appearance of partiality and, according to the First Circuit, resulted in the circumvention of the rules of evidence since the presentation shown to the jury on the order of the trial judge was found not admitted into evidence; 2) The prosecutor violated the Code of Professional Conduct by introducing non-relevant, personal and prejudicial information into the jury selection process and by involving the trial judge and the judge's staff in the process; 3) The Court of Appeal erred in finding the PowerPoint presentation not to be evidence or an exhibit since it was offered by the prosecution, after trial had begun, and was ordered shown to the jury by the trial judge.  The presentation met the criteria for a trial exhibit that, according to the Louisiana Uniform Rules, Courts of Appeal- Rule 2-1.7 is to be made part of the appellate record for review without the necessity for a showing of prejudice; 4) The Court of Appeal denied Tobie Gillespie his constitutional right to appellate review when it denied him access to an available trial exhibit and refused to consider properly assigned and argued assignments of error; 5) The Court of Appeal condoned the trial judge's and the prosecutor's departure from proper judicial proceedings and declined to fulfill its own constitutional and statutory mandate when it refused to consider properly assigned and briefed assignments of error relating to judicial and prosecutorial misconduct; 6) The Court of Appeal denied Tobie Gillespie Due Process when it affirmed his convictions on legally insufficient evidence, and, as to Count 3, rendered a decision that is in conflict with other courts of appeal; and, 7) The Court of Appeal failed to recognize that the right to a jury trial guaranteed by the Sixth Amendment encompasses the right to a unanimous verdict.

[8]*State v. Gillespie*, 953 So.2d 59 (La. March 30, 2007)(NO. 20006-K-1930).

On August 3, 2007, petitioner next filed a state post-conviction application with the trial court.[9] According to the state, that application was denied on August 24, 2007.

On or about March 19, 2008, petitioner filed the instant federal application for *habeas corpus* relief.[10]  In support of his application, petitioner raises the following claims for relief: 1) The trial judge erred in allowing the prosecutor to show the jury a Power Point presentation during voir dire; 2) The prosecutor violated the code of professional conduct when he introduced non-relevant, personal and prejudicial information (from the Power Point presentation) into the jury selection process; 3) The court of appeal erred in refusing to allow the Power Point presentation to be made a part of the appellate record; 4) The appellate court erred in denying petitioner an available trial exhibit; i.e., the Power Point presentation; 5) The appellate court erred in refusing to consider properly assigned and briefed assignments of error relating to judicial and prosecutorial misconduct (which allegedly occurred from presenting the Power Point); 6) The appellate court denied petitioner due process when it affirmed petitioner's convictions on insufficient evidence and rendered a decision on count 3 that was contrary to other state court appellate rulings; and, 7) The appellate court erred in failing to recognize petitioner's Sixth Amendment right to an unanimous verdict.[11] The State

---

[9]See State Rec. Vol. 6 for a copy of this application. The application was signed by Gillespie, *pro se*, on July 31, 2007.

[10]Petitioner is given the benefit of the date he signed and dated the application. The filing date in this court was actually April 16, 2008. See Fed. Rec. Doc. 1.

[11]Although sometimes phrased or arranged in a slightly different manner, these claims appear to be the same as those raised in petitioner's writ of certiorari request submitted to the Louisiana

claims that the issues raised in the federal petition are exhausted but argues that petitioner's federal application is untimely.[12]

<u>Timeliness</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[13]

As noted, Gillespie was convicted of his crimes on April 29, 2004 and he was sentenced on December 21, 2004. Gillespie took a timely direct appeal with the result being that his convictions and sentenced were affirmed on July 18, 2005. His conviction ultimately became final 90 days after the Louisiana Supreme Court denied his request for a writ of

---

Supreme Court in 2006. Compare Fed. Rec. Doc. 1 to Fed. Rec. Doc. 1-2, Application for Writ of Certiorari at pp. 11-12. With regard to the insufficiency of evidence claim, however, petitioner's brief appears to have limited its challenge to count 3, the attempted manslaughter count.

[12]See Fed. Rec. Doc. 6, Answer at pp. 2-3.

[13]   Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

certiorari on March 30, 2007, or on June 28, 2007.  This date is the date when Gillespie could no longer seek review of the highest state court's decision with the United States Supreme Court.  See Sup. Ct. R 13(1); *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003); *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099, 120 S. Ct. 1834, 146 L. Ed.2d 777 (2000). Generally, pursuant to 28 U.S.C. § 2244(d)(1)(A), the period that petitioner had to file his application for federal *habeas corpus* relief with respect to his state criminal judgment commenced on the date the conviction became final and would expire one year later, unless that deadline was extended through tolling. Accordingly, Gillespie's one year limitation period commenced to run, at the latest, on June 28, 2007.  Under a plain reading of the statute, Gillespie's habeas limitation period would expire one year later, on June 28, 2008.

Petitioner filed his federal habeas application on March 19, 2008 , prior to the June 28, 2008 deadline and therefore his federal habeas application is timely filed.[14] To the extent the State, through the District Attorney's office, argues to the contrary, the defense is

---

[14]Although unnecessary to the determination that Gillespie's federal habeas application is timely filed, the court also notes that Gillespie would have been entitled to an extension of the deadline for the time when each of his state post-conviction applications were pending pursuant to 28 U.S.C. §2244 (d)(2), an extension of 24 days.

hereby REJECTED.[15] Therefore, this court must address the merits of the claims raised in

Gillespie's federal petition.[16]

Facts[17]

On March 14, 2003, between 4:00 and 5:00 p.m., Officer Timothy Cox of the

Slidell Police Department was on duty when he observed a blue Ford Explorer (SUV) in a

turn lane on Gause Blvd. in Slidell, Louisiana.  Officer Cox immediately recognized the SUV

as being associated with information he received in a B.O.L.O. (be on the lookout) report

concerning a stolen license plate.  Officer Cox made a U-turn and began pursuit of the

---

[15] Although not meant to be an exhaustive investigation into where the State went wrong in its analysis, the court notes that the State failed to credit petitioner for the 90 days after the Louisiana Supreme Court denied petitioner's request for a writ of certiorari, as required by *Ott* and *Roberts*, *supra*.  Also, as explained in footnote 12, the state failed to credit the time for the pendency of petitioner's post-conviction applications. See 28 U.S.C. 2244(d)(2)(The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court.)

[16] Petitioner has filed a traverse to the State's claim that his petition is untimely (Fed. Rec. Doc. 8). After initially claiming that the State is incorrect regarding the alleged untimely federal application, petitioner goes on to assert that his attorney was ineffective in failing to object to the Power Point presentation that the prosecutor showed during jury selection, in failing to adequately investigate his case, and in failing to subject the prosecutor's case to "meaningful adversarial testing".  Petitioner raises these claims in his traverse and has not sought to supplement his petition with his claims of ineffective assistance, thus the issue of ineffective assistance is not properly before this court. Moreover, even if petitioner wanted to raise his claims of ineffective assistance, the claims have never been presented to the Louisiana Supreme Court and would therefore subject his petition to dismissal for failure to exhaust state remedies.

[17] The facts are taken from the unpublished appellate opinion in *State v. Gillespie*, Writ No. 2005-KA-1337 (La. Ct. App. 1st Cir., May 5, 2006), a copy of which is located in State Rec. vol. 6. This court has reviewed the trial transcripts and found the facts in the First Circuit's opinion to be supported by the record.

vehicle.  As Officer Cox positioned his unit behind the SUV, he called the Slidell Police Department dispatch to inform them of the pursuit and need for assistance.  Several officers of the Slidell Police Department responded to the scene of the pursuit.  The driver of the SUV, Douglas Jamison, stepped out of the vehicle armed with a gun and began firing toward Officer Cox.  Officer Cox laid over the seat to prevent injury.

Sergeant Kevin Simon responded to Gause Blvd. (at the Schwegmann Blvd. intersection) at approximately 4:45 p.m.  Sergeant Simon observed Jamison as he exited the vehicle and opened fire toward Officer Cox.  Sergeant Simon responded by firing his 9mm firearm through his unit's front windshield toward Jamison.  Jamison pointed his weapon toward Sergeant Simon as he retreated to the SUV.  Jamison began traveling westbound on Gause Blvd.  Several officers pursued the SUV as it crossed over the median (at Lakewood and Gause Blvd.) and proceeded westbound in the eastbound lane (driving against traffic and forcing other vehicles off of the road) at approximately 60 miles per hour in heavy traffic (in a 40-mile-per-hour speed zone).

The SUV entered the parking lot of a Hancock Bank, located four to five blocks from the Gause and Schwegmann intersection.  Sergeant Simon exited his unit in an attempt to retrieve spikes from the trunk of his unit.  As the SUV drove around the bank and approached the westbound exit, Sergeant Simon stood behind the driver's door of his unit.  The defendant, who was the front passenger of the SUV, aimed a firearm at Sergeant Simon

as the SUV continued toward the exit of the parking lot.  Sergeant Simon began firing his weapon.

The SUV reentered the eastbound lane of Gause Blvd., traveling westbound. The SUV ultimately crossed back over the median and proceeded westbound in the westbound lane.  As the SUV approached Harrison Road, it crashed into another vehicle and spun off of the road into a ditch.  Jamison and the defendant exited the SUV and took flight on foot in opposite directions.  The officers ultimately apprehended both assailants.  Jamison received a gunshot wound to his right wrist during the incident.   The defendant was uninjured.

During a pat-down search for weapons, Corporal Bryan Marquette recovered two fully loaded .45 caliber magazines from the defendant's person.  A black .45 caliber semi-automatic handgun was recovered from the passenger-side floorboard of the SUV.  The weapon was fully loaded at the time of the recovery.  Two jackets were also recovered from the rear floorboard of the SUV, behind the passenger seat.  One of the jackets, a leather jacket, contained two magazines with .45 caliber ammunition, eyeglasses, and an eyeglass case.  The second jacket, a fleece jacket, contained a .45 caliber bullet and a wooden box holding a pipe that contained marijuana.

### Standard of Review

The court's review of Gillespie's petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, which mandates that federal courts give great deference, subject

to limited exceptions, to the state courts' resolution of a petitioner's claims. *Holland v. Anderson,* 583 F.3d 267, 271 (5th Cir. 2009), citing *Foster v. Quarterman,* 466 F.3d 359, 365 (5th Cir.2006). This "deference is mandated both for questions of law and for mixed questions of law and fact." *Id.* Under AEDPA, a federal court cannot grant habeas relief unless the state court adjudication of a claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Id.* at 272, citing 28 U.S.C. § 2254(d); *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). "Under § 2254(d)(1), a decision is contrary to clearly established federal law if 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent].' " *Oliver v. Quarterman*, 541 F.3d 329, 334 (5th Cir.2008) (quoting *(Terry) Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)) (alterations in original), *cert. denied*, --- U.S. ----, 129 S.Ct. 1985, 173 L.Ed.2d 1084 (2009). "A decision involves an unreasonable application of Supreme Court precedent if it 'unreasonably extends a legal principle from [Supreme Court precedent] to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.' " *Id.* (*quoting Williams*, 529 U.S. at 407, 120 S.Ct. 1495) (alteration

in original). This court must presume that the state court's factual findings are correct unless Gillespie meets his " 'burden of rebutting [that] presumption ... by clear and convincing evidence.' " *Foster*, 466 F.3d at 365 (quoting 28 U.S.C. § 2254(e)(1)) (alteration and omission in original).

<u>Claims 1-5: Power Point Presentation</u>[18]

The court will address Claims 1-5 together since all of these issues arise out of the trial court's decision to allow the prosecutor to show a PowerPoint presentation to the jury during the jury selection process. A copy of this PowerPoint presentation has not been included in the record produced to this court by the State nor has the petitioner produced a copy of it. However, the following facts relevant to this issue were found by the Louisiana Court of Appeal, First Circuit in addressing petitioner's motion to supplemental his direct appeal. This court has reviewed the voir dire transcript sections referenced herein which support these findings and finds the facts as found by the state court are entitled to deference:[19]

---

[18]To reiterate, the first five claims raised by petitioner are: 1) The trial judge erred in allowing the prosecutor to show the jury a PowerPoint presentation during voir dire; 2) the prosecutor violated the code of professional conduct when he introduced non-relevant, personal and prejudicial information from the Power Point presentation into the jury selection process; 3) The court of appeal erred in refusing to allow the Power Point presentation to be made a part of the appellate record; 4) the appellate court erred in denying petitioner an available trial exhibit, i.e., the power Point presentation; 5) the appellate court erred in refusing to consider properly assigned and briefed assignments of error relating to judicial and prosecutorial misconduct in showing the Power Point presentation to the jury.

[19]The PowerPoint discussion begins at State Rec. Vol. 2, Transcript of proceedings (TT.) dated April 26th, 2004 at p. 39. An example of the way the presentation was used by the prosecutor is that

The voir dire transcript reflects that the trial court instructed the panel, before the presentation was played, that the PowerPoint presentation was simply a tool the prosecutor used to assist with the selection process but the court would actually instruct the jury on the specific laws to be applied.  The court also indicated that the defense would be allowed to show a presentation if the defense counsel so desired.

The prosecutor began his portion of the voir dire with conventional explanations and questions to the jury. The transcript does not indicate the precise point when the presentation began, but it indicates the prosecutor began to refer to photographs at the start of his discussion of circumstantial and physical evidence.  In his narrative, he identified his spouse and pets and presented an inquiry to be resolved through the use of circumstantial and direct evidence. The prosecutor used the presentation and his explanation to show the potential jurors the difference between the types of evidence and their uses.

The presentation was never introduced into evidence.  The court reporter recorded and transcribed the verbal comments prosecutor made as the slides were shown to the prospective jurors.  The defense attorney did not object to the use of the presentation or request that it be included in the record."[20]

---

the prosecutor used the scenario of a missing peanut butter sandwich with his sleeping wife and two dogs as possible "suspects" to illuminate the jury about the law of principals, direct, circumstantial, physical and testimonial evidence, among other legal concepts. The defense attorney objected only to a definition given relative to specific intent to kill, see TT. at p. 49-50, at which point the judge explained that the voir dire process was not evidence in any way and that only he, the trial judge, would give the final instruction as to what law was to be applied by the jury. See TT. at p. 51. This court's independent review of the record shows that the defense attorney did not object to the PowerPoint presentation itself, nor was the presentation admitted into evidence.

[20]See Decision in Writ No. 2005-KA-1337, *State v. Gillespie*, (La. Ct. App. 1st Cir. 11/4/2005), a copy of which can be found in State Rec. Vol. 5.

At issue when the Louisiana First Circuit Court of Appeal rendered this decision was whether the defense attorney's motion to supplement the record with the Power Point presentation and a supplemental brief on issues arising out of the Power Point presentation would be granted.  The state appellate court ruled that the motion to supplement would be denied.  As reasons for its decision, that court stated that the presentation had never been introduced into evidence and the defense attorney *never objected* to the presentation nor did he request that it be included in the record. On these grounds, the court denied the supplementation.[21]

The failure to make a contemporaneous objection at trial is governed by Louisiana Code of Criminal Procedure Art. 841, which provides, in pertinent part: "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." As a rule, failure to comply with a state's contemporaneous objection rule bars federal habeas review of an alleged constitutional error in the absence of a showing of cause and prejudice. *Price v. King*, 714 F.2d 585 (5th Cir. 1983), citing *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). The mere fact that a federal petitioner failed to abide by a state procedural rule, however, does not prevent a federal court from resolving a federal claim unless the state court *actually relied upon* the state procedural bar 'as an independent basis for its disposition of the case." *Harris v. Reed*, 489 U.S. 255, 261-262,

---

[21]See Decision in Writ No. 2005-KA-1337, noted in footnote 19.

109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (emphasis added). Thus the question becomes whether the state courts independently relied upon petitioner's failure to contemporaneously object to the PowerPoint presentation in denying relief on that claim.[22]

Review of the Louisiana Supreme Court's decision addressing petitioner's claims relative to the Power Point presentation shows that the highest state court merely issued the one word opinion, "Denied." [23]   However, "[w]hen the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last **reasoned** state court opinion.  *Ylst v. Nunnemaker***,** 501 U.S. 797, 802, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991) (emphasis added).  In this case, the last reasoned state court opinion denying relief was the state appellate court's decision quoted from, above. From this decision, it is evident that the court relied upon the lack of a contemporaneous object as a basis for denying relief.[24]   It is well-settled that the contemporaneous-objection rule is an

---

[22]A federal court has authority to address procedural default *sua sponte* even if the claim is not raised by the respondent. *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir. 1998). **This Report and Recommendation thus provides petitioner with the requisite notice that the court will apply the procedural default doctrine to his claim and his ability to file objections to ths Report and Recommendation within 14 days provides him the opportunity to respond to the claim that procedural default mandates the dismissal of his application.**  See *Magouirk*, 144 F.3d at 359.

[23]See *State v. Gillespie*, 2006-K-1930 dated March 30, 2007, a copy of which is found in State rec. Vol. 6.

[24] Even if the state courts alternatively had denied petitioner's claims relative to the Power Point presentation on the merits, the procedural bar would prevail. "A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches

independent and adequate state procedural ground which makes a claim immune from federal review.  *Wainright v. Sykes*, 433 U.S. 72, 87-88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002). Moreover, petitioner offers no showing of "cause and prejudice" for the default or that a fundamental miscarriage of justice will occur if the claim is defaulted.  To the extent petitioner tries to argue that his attorney was ineffective for failing to contemporaneously object to the presentation, he has not exhausted such a claim of "cause".  Since he has never raised the issue of ineffective assistance of counsel relative to the lack of a contemporaneous objection before the highest state court, the claim is unexhausted. In *Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (April 25, 2000), the U.S. Supreme Court ruled that a procedurally defaulted ineffective assistance of counsel claim can serve as "cause" to excuse the procedural default of another *habeas* corpus claim *only if* the *habeas* petitioner has exhausted the ineffective assistance of counsel claim or can satisfy the "cause and prejudice" standard with respect to the ineffective assistance of counsel claim itself.  Here, petitioner has done neither. Accordingly, petitioner's claims relative to the Power Point presentation are procedurally barred from this court's review.[25]

---

the merits of a [petitioner's] claim."  *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

[25]Another way to analyze the claims involving the Power Point presentation are that the claims were never raised before the state courts in a procedurally proper manner.  Although counsel for defendant attempted to have her claims relative to the Power Point presentation supplement her original appeal, the state appellate court denied the supplementation on procedural grounds, i.e., that the defense had never made a contemporaneous objection to the Power Point presentation at trial.

In the alternative, the court finds no merit to the complaints petitioner makes relative to the use of the Power Point presentation. The trial judge specifically instructed the jury that the voir dire process was not evidence in any way. The jury was also instructed to follow the law as given by the judge, rather than as told to them by the attorneys.(*See* trial transcript at p. 51, State Rec. vol. 2).  Any possible prejudice from the presentation was therefore cured with the instructions from the judge and juries are presumed to follow such instructions.  *United States v. Bullock*, 71 F.3d 171, 175 (5th Cir. 1995), *cert. denied*, 517 U.S. 1126, 116 S.Ct. 1365, 134 L.Ed.2d 531 (1996), *citing Zafiro v. United States*, 506 U.S. 534, 540-41, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993). Additionally, the state courts' decision not to allow the Power Point presentation to be considered as a trial exhibit or not to address the improperly supplemented claims relative to the Power Point presentation cannot be found unreasonable in light of petitioner's default by failing to object at trial. Therefore, there is no merit to petitioner's claims, numbered 1-5, relative to the Power point presentation.

### Claim 6: Insufficient Evidence

Gillespie asserts that the evidence used to convict him was legally insufficient relative to the issue of specific intent, specifically as to count 3, the attempted manslaughter charge.  Gillespie raised this challenge to the sufficiency of evidence in his direct appeal as

---

Therefore, when the claim was raised to the highest state court, the claim was not presented to the highest court in a procedurally proper manner and was, therefore, defaulted.

issue #1.[26] Although the habeas petition before this court is short on briefing relative to this issue, petitioner's direct appeal brief sheds some light on this claim.  On direct appeal, petitioner argued that it was more believable for the jury to conclude that Jamison, petitioner's co-defendant, reached over Gillespie and pointed a gun at Sergeant Simon; or, in the alternative, that even if Gillespie did point the gun at Sergeant Simon, since he did not fire the gun, there was insufficient evidence that he intended to kill Simon.

The Supreme Court established the due process standard a reviewing court must utilize in analyzing the sufficiency of the evidence in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  Pursuant to *Jackson,* the inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime, as identified by state substantive law, to have been proven beyond a reasonable doubt.  *Id.* at 316-17, 99 S.Ct. at 2787.  In a federal habeas corpus proceeding, great deference must be given to the factual findings in the state court proceedings such that the reviewing court must defer to the jury's resolution of credibility determinations and the justifiable inferences of fact that can be drawn from these determinations  *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989).  Further, the habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact.  *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993), *cert. denied*, 114 S.Ct.

---

[26]See State Rec. vol. 6 for a copy of petitioner's direct appeal in Writ No. 2005-KA-1337, at p. 4.

637, 126 L.Ed.2d 596 (1993), *citing Summer v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303,

1306, 71 L.Ed.2d 480 (1982). A claim of insufficiency of the evidence is a mixed question

of law and fact, requiring this Court to examine whether the state court's denial of relief was

contrary to or an unreasonable application of United States Supreme Court precedent. *Penry*

*v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir.

1995).

      The state appellate court, applying the *Jackson* standard, thoroughly addressed

petitioner's claim in a lengthy discussion of both federal and state law. The court defined

specific intent, as follows:

> Specific criminal intent is that state of mind which exists when
> the circumstances indicate that the offender actively desired the
> prescribed criminal consequences to follow his act or failure to
> act. La. R.S. 14:10(1). Specific intent may be proved by direct
> evidence, such as statements by a defendant, or by inference
> from circumstantial evidence, such as the defendant's actions or
> facts depicting the circumstances.[27]

      The state appellate court then set forth the elements of the crime of

manslaughter as a crime that would be a homicide, but the offense is committed in "sudden

passion or heat of blood immediately caused by provocation sufficient to deprive an average

---

[27]The state court's citations to state jurisprudence are omitted here as the issue of whether the state properly filed its own jurisprudence/precedent is not cognizable on federal *habeas* review. A federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir.1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67- 68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir.1996)).

person of his self-control and cool reflection."[28] The state court noted that petitioner was

originally charged with attempted first degree murder for attempting to kill Sergeant Simon.

Since the jury returned a verdict of attempted manslaughter without any evidence being

offered of "sudden passion" or "heat of blood", the court determined that the jury's verdict

was a compromise verdict since attempted manslaughter was a responsive verdict to the

crime of attempted first degree murder. "Jurors may return a 'compromise' verdict for

whatever reason they deem to be fair, so long as the evidence is sufficient to sustain a

conviction for the charged offense."[29] The remaining issue, therefore, was whether the

evidence was sufficient to support the original charge of attempted first degree murder.

> The state court's assessment of that issue, in pertinent part, was as follows:
>
> According to La. R.S. 14:30(A)(2), first degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon a peace officer engaged in the performance of his lawful duties.  Louisiana Revised Statute 14:30(B)(1) defines a "peace officer" as "any peace officer, as defined in R.S. 40:2402, and includes any ... sheriff, deputy sheriff, local or state policeman ... [or] federal law enforcement officer."  The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the

---

[28]See State Rec. vol. 6 for a copy of petitioner's direct appeal in Writ No. 2005-KA-1337, at pp. 5-6.  See Also pp. 4-10 of that opinion for the Louisiana Court of Appeal, First Circuit's full discussion of the issue of sufficiency of the evidence.

[29]*State v. Gillespie*, Writ No. 2005-KA-1337 at p. 7, *citing State ex rel. Elaire v. Blackburn*, 424 So.2d 246, 251(La. 1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983); *State v. Odom*, 878 So.2d 582, 588 (La. App. 1st Cir. 2004)(Writ No. 2003-1772), *writ denied*, 883 So.2d 1026 (La. 10/8/04)(Writ No. 2004-115).

accomplishment of that goal. *State v. Graham*, 2002-1494 (La. App. 1st Cir. 2/14/03), 845 So.2d 416, 420. Thus, in order to commit attempted first degree murder under the circumstances set forth in La. R.S. 14:30(A)(2) and 14:27, the offender must possess the specific intent to kill a person who is a peace officer engaged in the performance of his lawful duties.

In the instant case, the defense elicited testimony in an attempt to show that Jamison, the driver of the SUV, reached over the defendant to point the gun at Sergeant Simon. At the time of his arrest, the defendant had what appeared to be a bloodstain on his tee shirt. Also, a substance that appeared to be blood was located on the console of the SUV and next to the console on the left side of the passenger seat. The other officers on the scene at the pertinent time did not have an unobstructed view of the SUV and did not see the defendant point a weapon toward Sergeant Simon. Nonetheless, Sergeant Simon testified at trial that he was certain that the defendant pointed a black gun toward him at the front passenger window. In his videotaped interview after his arrest, the defendant denied any active participation in the offenses. He indicated that he had been in and out of consciousness just prior to the incident, as he was highly intoxicated the night before.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. *State v. Gordon*, 582 So.2d 285, 292 (La. App. 1st Cir. 1991). In returning this guilty verdict, the jury obviously believed the testimony presented by the State. The credibility of the witnesses' testimony is a matter of the weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. *State v. Tate*, 506 So.2d 546, 551 (La. App. 1st Cir.), *writ denied*, 511 So.2d 1152 (La. 1987).

Thus, this court will not second-guess the jury's finding of fact as to the defendant's active participation and guilt by pointing a deadly weapon at Sergeant Simon. The trier of fact apparently concluded that an intervening factor prevented the defendant from completing the crime of murder. We find such a

conclusion reasonable.  Specific intent can be formed in an instant.  We find that the defendant's specific intent to kill Sergeant Simon may be inferred from his act of aiming the fully loaded weapon directly toward Sergeant Simon under the instant circumstances (including a police chase in which a gun had already been fired by another police officer). . . . .

. . . .

Herein, the defendant offers no hypothesis of innocence for his actions in pointing the gun.  Nonetheless, the jury could have reasonably rejected any hypothesis of innocence and inferred from the evidence as a whole that the defendant raised and aimed the fully loaded firearm with the intent to kill Sergeant Simon.  At that moment, Sergeant Simon opened fire.  While mere preparation to commit a crime shall not be sufficient to constitute an attempt, "lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended." La. R.S. 14:27 (B)(1). The fact that the defendant did not pull the trigger before Simon Sergeant opened fire is of no moment, as it is immaterial whether the defendant would have actually accomplished his purpose. See La. R.S. 14:27(A).  It is evident that the victim of the instant offense, Sergeant Simon, was a peace officer engaged in the performance of his lawful duties.  It is further evident that the defendant had the specific intent to kill Sergeant Simon and pointed the loaded firearm toward Sergeant Simon for the purpose of and tending directly toward the accomplishing of his object.

Viewed in the light most favorable to the State, we find the evidence was sufficient for rational jurors to conclude that the State proved the essential elements of the charged offense, attempted first degree murder of Sergeant Simon, beyond a reasonable doubt. Hence, the jury did not err in returning the responsive verdict of attempted manslaughter.

Having reviewed the trial transcripts in this case, particularly the critical testimony of Sergeant Simon, the court finds the state court's determination on this issue to

be supported by the record and by *Jackson v. Virginia.*  Specifically, Sergeant Simon testified that the suspects, going fast, approached him in a vehicle driven by co-defendant Jamison, that he saw the passenger (Gillespie) sitting up in his seat, that he could see Gillespie "had the black gun now in his hand and when it pointed towards me I fired two rounds at him through the passenger side of the vehicle."[30]   The Sergeant reiterated that Gillespie pointed the gun at him, upon further questioning by the prosecutor:

> Q: You said you saw him with the black gun?
>
> A:  Uh huh.
>
> Q:  Where did you see this black gun before?
>
> A:  It was here in the driver's hand when I shot at him, shooting Officer Cox.
>
> Q:  When you first saw the passenger with the black gun, what was he doing with it?
>
> A:  Pointing it at me.
>
> Q:  How far away was the Explorer when you shot?
>
> A:  Approximately twenty, thirty yards, twenty, thirty feet, because I'm here and he's coming right through here, and this isn't very, I mean, you can fit one car inside the lane and I was almost up to the lane.[31]

This court does not find the state court's decision unreasonable.  The state court found that the jury accepted the pointing of the gun under these circumstances to be sufficient

---

[30]Transcript at p. 12, located in State Rec. vol. 4 at p. 644.

[31]Transcript at pp. 12-15.

evidence of Gillespie's specific intent to kill Sergeant Simon.  Giving the deference that must be given to the factual findings of the state court and deferring to the jury's resolution of credibility determinations and reasonable inferences of fact that can be drawn from these determinations, this Court agrees with the First Circuit's outcome on this claim. *See Knox*, 884 F.2d  at 851.  Petitioner's claim that there was insufficient evidence to convict him is without merit.[32]

### Claim 7: Unanimous Verdict

Petitioner's last claim raises the issue that the right to a jury trial guaranteed by the Sixth Amendment includes the right to an unanimous verdict. Petitioner complains because, relative to count 3, the charge of attempted manslaughter, he received a verdict of 10 votes for guilty and 2 votes for not guilty rather than an unanimous vote by a jury of 12.

In Louisiana, "[c]ases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict." La. C. Cr. P. art. 782.  Attempted manslaughter is a crime punishable under state

---

[32]Although petitioner does not appear to challenge the sufficiency of the evidence relative to the charge of illegal carrying of a weapon while committing or attempting to commit a crime of violence or while in possession of a controlled dangerous substance, in this habeas proceeding, the court has also reviewed the decision of the Louisiana First Circuit Court of Appeal on direct appeal and finds that its review of this claim is also reasonable.  Applying the guidelines of *Jackson v. Virginia*, to the facts developed at trial, sufficient evidence was offered by the state relative to petitioner's possession of a controlled dangerous substance, see pp. 10-12 of the First Circuit's opinion, and Sergeant Simon's testimony and other record evidence supported the finding that petitioner used, possessed or had a weapon in his immediate control at the time of the crime. *See* State Rec. vol. 6 for a copy of petitioner's direct appeal in Writ No. 2005-KA-1337.

law by hard labor. La. R.S. 14:27; 14:31(B). In addition, the U.S. Supreme Court has long held that the Sixth Amendment, as applicable to the states through the Fourteenth Amendment, does not require jury unanimity for state criminal trials. *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). S*ee also Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972)(holding that the Due Process Clause does not require unanimous jury verdicts in state criminal trials); *Diver v. Warden*, 2010 WL 4291330 (W.D. La., Aug. 17, 2010)(applying *Apodaca* and denying state habeas petitioner's claim that the Sixth Amendment was violated when he was convicted of second degree murder by a non-unanimous jury.)

In the case at bar, the state trial judge specifically instructed the jurors that to return a legal verdict on count 3, the attempted manslaughter charge, the 12-member jury[33] would have to have 10 members concur.[34] The jury subsequently returned a legal jury verdict of 10 finding Gillespie guilty of attempted manslaughter and 2 finding him not guilty.[35]

---

[33]The complete list of 12 jurors and 1 alternate can be located at State Rec. vol. 3 at p. 497; Trial transcript Vol. III, Index to transcript.

[34]State Rec. vol. 4 at p. 759, Trial Transcript Vol. IV at p. 127.

[35]The Verdict Form is located in State Rec. vol. 1 at p. 117-118 and is signed by jury foreperson Linda Byrne. The court does note that either an error of the Clerk or the transcriptionist on April 29, 2004, the day the verdict was returned, occurred during the jury polling. When the jury was polled, it appears that Juror Wells was not specifically polled. However, the court minutes for the day indicate that, as to count three, ten jurors voted yes (guilty) and two members voted no (not guilty). See State Rec. vol. 1 at p. 47. No objection was ever made to the polling and it is uncontested that the jury voted 10-2 in favor of a guilty verdict. As already noted, the 10-2 vote is supported in the record by the jury instructions given, the itemization of the 12 jury members' names, as well as by

This court finds that the state court's denial of petitioner's challenge to the lack of unanimity in the jury that convicted him to be in accord with U.S. Supreme Court precedent.  Accordingly, no relief is warranted on this claim.

## RECOMMENDATION

For the afore-mentioned reasons, **IT IS HEREBY RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Tobie Gillespie be **DENIED WITH PREJUDICE**.  A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass' n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[36]

New Orleans, Louisiana, this 22nd day of November, 2010.

LOUIS MOORE, JR.
UNITED STATES MAGISTRATE JUDGE

the Jury Verdict form.

[36]*Douglas* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

– 25 –